## NATIONAL LABOR RELATIONS BOARD v. FITZPATRICK & WELLER, Inc.

### No. 20.

Circuit Court of Appeals, Second Circuit.

Nov. 3, 1943.

---

Robert B. Watts, Gen. Counsel, Ernest A. Gross, Associate Gen. Counsel, Howard Lichtenstein, Asst. Gen. Counsel, and David Findling and Isadore Greenberg, Attys., National Labor Relations Board, all of Washington, D. C., for petitioner.

Louis A. Gerace, of Batavia, N. Y., and G. Kibby Munson, of Washington, D. C. (Roberts & McInnis, of Washington, D. C., of counsel), for Fitzpatrick & Weller, Inc.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

PER CURIAM.

A C. I. O. union called the International Fur and Leather Workers Union of United States and Canada filed charges with the National Labor Relations Board against the respondent as is provided by the Wagner Act (29 U.S.C.A. § 151 et seq.). After hearing by a trial examiner, the respondent was found to have engaged in unfair labor practices by interfering with, restraining and coercing its employees in their exercise of their right to bargain collectively as provided by § 7 of the Act and by so doing to have violated § 8 (1). The order this petition was brought to enforce required the respondent to cease and desist from such unlawful activities and to post notices of compliance.

The jurisdiction of the board is clear and undisputed. The respondent insists (1) that the findings on which the order is based are not supported by the evidence; (2) that because of a settlement it had previously made with a regional representative of the board involving the subject matter of these charges the board was precluded from proceeding at all; and (3) that the order is unenforceable because it requires a reduction in wages not approved by the National War Labor Board as required by Executive Order No. 9250, issued October 3, 1942.

There is little dispute about what happened before the charges were filed, but the proper inferences to be drawn from the facts are much in dispute. The respondent is a corporation which operates two wood working mills, one at Salamanca, N. Y., and another nine miles away at Ellicottville, N. Y., where it manufactures last blocks and barrel headings under the active, general supervision of William Fitzpatrick, its secretary and treasurer. The principal question upon which enforcement of the order turns is whether there was substantial evidence to show that two employees, a man named Quackenbush and a Miss Alsdorf, who did try to influence employees in respect to their union affiliation, were justifiably found by the board to have been acting in that regard in behalf of the respondent.

Early in February 1942, a representative of the union began to solicit members among the respondent's employees, and on the fifth of the month a meeting was held at Salamanca which was attended by about thirty-five of them who came from both mills. A majority of those who attended signed applications for membership in the union, and the next day the respondent was notified by letter received from the union's organizer that a meeting for collective bargaining purposes was desired. The respondent's attorney replied that he did not believe the union represented a majority of the respondent's employees and that it could not negotiate anyway until William Fitzpatrick, who was not then available for that purpose, could represent the respondent. By February 11th, no meeting for collective bargaining having been held, Quackenbush was shown to have questioned, in talking with employees, the wisdom of joining the union and to have told one of them that "if they shut the mill down * * * he (Quackenbush) could not get a job." About a week later Quackenbush asked two employees to go to see Miss Alsdorf, the bookkeeper, and to ask

another employee to go with them. They did so, and in company with one other who had gone to her office on a different errand and who like the three of them were members of the union, were told by Miss Alsdorf that if they signed letters of withdrawal from the union which she had ready for signature the employees would get a wage increase of five cents an hour and a reduction in the price then being charged them for waste mill wood which they bought and used for fuel. Two of them signed letters, and by February 22d, the union organizer had received those and eight other similar letters of withdrawal signed by employees who had joined the union. On February 21, the respondent increased wages at both plants five cents an hour and decreased the price of waste wood at the Salamanca mill.

■ There can be no doubt that what Quackenbush did to discourage membership in the union was properly treated as done by the respondent. The uncontradicted evidence showed that he was the foreman in charge of the employees whom he questioned about their union activities in such a way that his opposition was apparent. His supervisory capacity as foreman was enough to justify the board's conclusion that what he did was chargeable to the respondent. It was certainly contrary to § 8(1) of the statute. H. J. Heinz Co. v. N. L. R. B., 311 U.S. 514, 520, 61 S.Ct. 320, 85 L.Ed. 309; F. W. Woolworth Co. v. N. L. R. B., 2 Cir., 121 F.2d 658, 660.

■ The conclusion that the respondent was likewise to be held chargeable under the statute with what Miss Alsdorf said and did to interfere with membership in the union was also fairly drawn from the plain facts. While she could not hire or discharge employees and her only fixed duties were those of a bookkeeper and person in charge of the money received from the sale of waste wood at the Salamanca mill, she was in fact the person to whom the foreman directed employees to go and who persuaded them to sign prepared letters of withdrawal from the union. She was the one who promised an increase in pay provided the letters were signed, and the increase was made by the respondent as promised by her. Her authorization by the respondent to convey the information she did to the employees and to request the withdrawals from union membership as she did at the same time could well be inferred

by the board from the proof that what she said it would do it did do. International Ass'n of Machinists, Tool and Die Makers Lodge No. 35 v. National Labor Relations Board, 311 U.S. 72, 80, 61 S.Ct. 83, 85 L. Ed. 50. The evidence was, therefore, ample to support the findings.

■ The point that there was a settlement of this labor dispute made by the respondent with the regional representative of the board merits little consideration. We need not decide in what respect, if at all, the board would have been bound had one been made, for it found that there was no settlement and the record shows none.

■ The raise in wages was, indeed, held to be an unfair labor practice, and the order in its general terms, to cease and desist from such violations of the statute as those which had been found could be construed to include the rescission of the increase. There is no reason to believe such a result was intended, however, and we understand that neither side desires that. The order will, therefore, be regarded as not requiring any wage reduction.

The petition to enforce the order is granted.